# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-DP-01094-SCT

*KELVIN DYCUS a/k/a KEVIN DYCUS*

**v.**

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/19/1998 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYMOND L. WONG |
| | ROBERT McDUFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JUDY T. MARTIN |
| | MARVIN L. WHITE |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLON |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART- 09/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This case is before the Court on remand from the United States Supreme Court. ***Dycus v. Mississippi***, _ U.S._ , 125 S.Ct. 1589, 161 L.Ed.2d 271 (2005).   Kelvin Dycus and his brother Jason Dycus were arrested for the 1996 murder and robbery of 76-year-old Mary Pittman.    At the time of the  murder, Kelvin Dycus was 17 years old,  and his brother was 15 years old.   A jury convicted Kelvin Dycus of capital murder and sentenced him to death.   The

jury also convicted Dycus of auto theft for which he was sentenced to five years in the custody of the Mississippi Department of Corrections. This Court affirmed both convictions and sentences. *Dycus v. State*, 875 So.2d 140 (Miss. 2004). The United States Supreme Court subsequently held that the Eighth and Fourteenth Amendments to the United States Constitution forbid the imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. *Roper v. Simmons*, 543 U.S._, 125 S.Ct. 1183, 1200, 161 L.Ed.2d 1, 28 (2005). The United States Supreme Court thereafter vacated the judgment of this Court and remanded this case for further consideration in light of its decision in *Roper*. This Court called for supplemental briefs from the parties, and both sides concur that Dycus must be resentenced to life in prison without parole.

¶2. This Court has considered this case further in light of *Roper*. *Roper* requires that Dycus's death sentence be vacated and this case remanded for resentencing. However, *Roper* does not affect the remainder of this Court's prior opinion and judgment. Accordingly, this Court now reaffirms the convictions of Kelvin Dycus for capital murder and auto theft and his sentence for auto theft and hereby reinstates and adopts its prior opinion in its entirety except to the extent it addresses the issues relating to the death sentence. As required by the United States Supreme Court in *Roper*, this Court hereby vacates the death sentence of Kelvin Dycus and remands this case to the Circuit Court of Bolivar County for resentencing of Kelvin Dycus on Count I to life imprisonment in the custody of the Mississippi Department of Corrections without the possibility of parole.

¶3. **COUNT I: CONVICTION OF CAPITAL MURDER AFFIRMED. SENTENCE OF DEATH BY LETHAL INJECTION, VACATED AND CASE REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT IN THE CUSTODY OF THE**

2

**MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE.**

**COUNT II: CONVICTION OF UNLAWFUL THEFT OF AN AUTOMOBILE AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ. DIAZ, J., NOT PARTICIPATING.**

**RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶4. I concur in the majority's opinion and judgment because my oath and loyalty to this office and the law require me to comply with the mandate of the United States Supreme Court in ***Roper v. Simmons***, 543 U.S.-, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), for separate and distinct, but intertwined reasons. First, the United States Constitution clearly vests in the Supreme Court the absolute judicial power of the United States. U.S. Const. art. III, § 1. Next, respect for the rule of law is essential for the orderly administration of justice. *See **Roper,*** 125 S.Ct. at 1217, 1226-27 (Scalia, J., joined by Rehnquist, C.J., & Thomas, J., dissenting). Finally, the Code of Judicial Conduct requires a judge to be faithful, respectful, and compliant with the law, as well as not swayed by partisan interests, public clamor, or fear of criticism. Miss. Code of Judicial Conduct, Canons 2A & 3B(2).

¶5. I am bound by the ***Roper*** decision. Therefore, it is of no import what my personal views on the death penalty, or any other subject, may be; or, whether I personally agree or disagree with an opinion of the Supreme Court; or for that matter, whether the opinion relies on sound logic and reasoning leading to a just result, vel non.

¶6. The dissents in *Roper* opine that the majority decision is legally flawed, lacks valid reasoning and defies historic precedent. *See **Roper,*** 125 S.Ct. at 1217-30 (Scalia, J., dissenting). If personal whims or beliefs are besetting the Constitution, and ignoring the rule of law, then those culpable of such conduct should either recuse themselves from such cases, or consider the honorable path chosen by former Justice Harry A. Blackmun. Blackmun, when faced with such a dilemma declared, "I no longer shall tinker with the machinery of death." ***Callins v. Collins,*** 510 U.S. 1141, 114 S.Ct. 1127, 1130, 127 L.Ed.2d 435 (1994) (Blackmun, J., dissenting from denial of certiorari), and shortly thereafter, retired.

¶7. Our Constitution requires strict adherence to the doctrine of separation of powers. The people's will can best be determined by the nation's legislatures, both federal and state, for social policy and in individual cases, by a jury of one's peers. I would respectfully urge the Supreme Court to exercise judicial restraint, as the function of all courts is to adjudicate, not to legislate. Courts are charged with the responsibility to interpret, not create law.

¶8. "In a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people." ***Roper,*** 125 S.Ct. at 1222 (Scalia, J., dissenting) (quoting ***Furman v Georgia,*** 408 U.S. 238, 383, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting)). "[W]e have, in our determination of society's moral standards, consulted the practices of sentencing juries: Juries 'maintain a link between contemporary community values and the penal system' that this Court cannot claim for itself." ***Roper,*** 125 S.Ct. at 1222 (Scalia, J., dissenting) (quoting ***Witherspoon v. Illinois,*** 391 U.S. 510, 519 n.15, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)).

4

¶9.    The ***Roper*** majority declared that the "expansive language in the Constitution, must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design. To implement this framework we have established the propriety and affirmed the necessity of referring to 'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual." ***Roper,*** 125 S.Ct. at 1190 (quoting ***Trop v. Dulles,*** 356 U.S. 86, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)(plurality opinion)). Such amorphous terminology provided the framework upon which ***Roper*** was decided. It is not the Constitution which is changing, but only some individual justices rearranging a shapeless concept to fit their personal whims and declaring that to be the law *du jour*, without sufficient deference to the intent of the framers of the Constitution; the rule of law; legislative acts; and finally, the decision of a jury.

¶10.    The Supreme Court's implementation and subsequent reliance upon ***Trop***, and a series of other of plurality decisions, has self-empowered the Court to impose its independent moral judgment on constitutional issues. In ***Roper,*** the majority applied this framework, "substitut[ing] [its] judgment about the moral propriety of capital punishment for 17-year-old murderers for the judgments of the Nation's legislatures." ***Roper,*** 125 S.Ct. at 1206 (O'Connor, J., dissenting).

¶11.    In his dissent, Justice Scalia, joined by Chief Justice Rehnquist and Justice Thomas, opines the majority in ***Roper*** not only changed the Constitution, but failed to honor the rule of law, while "proclaim[ing] itself sole arbiter of our Nation's moral standards," ***Roper,*** 125

5

S.Ct. at 1217 (Scalia, J., dissenting), and at the same time saying "what our people's laws say about the issue does not... matter....." *Id.*

¶12. Such heinous and atrocious crimes, as committed by Simmons and Dycus, as well as the ever-increasing multitude of other heinous crimes involving the abduction, torture, molestation and murders by sexual predators should cause the Court to pause, reflect, and then reconsider the existing framework by which it analyzes the United States Constitution.

¶13. One only needs to look at the negative changes in our society caused by the attacks on the Constitution and the resultant experiential harm suffered by individual citizens of this country to question why a strict adherence to such a novel concept of less than forty-seven years should be the appropriate standard for interpreting the Constitution. I marvel that this framework was either completely overlooked by or hidden from all of the learned justices who sat on the Court for 169 years preceding *Trop*. If blindly followed, this treatment of the Constitution shall most assuredly lead to the ruin and destruction of the noblest democratic experiment in the history of man.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., JOIN THIS OPINION.**